UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HAL OSTROW,

        Plaintiff,

v.

MIDLAND CREDIT MANAGEMENT,
INC., and MIDLAND FUNDING LLC,

        Defendants.
_____/

## Complaint

### I. Introduction

1. This is an action for damages, brought against debt collectors for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, Michigan Collection Practices Act ("MCPA"), M.C.L. § 445.251 *et seq.*, and Michigan Occupational Code ("MOC"), M.C.L. § 339.901 *et seq.*

### II. Jurisdiction

2. This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367. Venue in this judicial district is proper because the pertinent events took place here.

### III. Parties

3. Plaintiff Hal Ostrow is a natural person residing in Kent County, Michigan. Mr. Ostrow is a "consumer" and "person" as the terms are defined and used in the FDCPA. Mr.

1

Ostrow is a "consumer," "debtor" and "person" as the terms are defined and used in the MCPA and MOC.

4.  Defendant Midland Credit Management, Inc. ("MCM") is a Kansas corporation, with offices at 8875 Aero Drive, Suite 200, San Diego, California 92123. The registered agent in Michigan for MCM is CSC-Lawyers Incorporating Service (Company), 601 Abbott Road, East Lansing, Michigan 48823. MCM uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. MCM regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. MCM is a "debt collector" as the term is defined and used in the FDCPA. MCM is licensed by the State of Michigan (No. 2401002431) to collect consumer debts in Michigan. MCM is a "collection agency" and "licensee" as the terms are defined and used in the MOC. Alternatively, MCM is a "regulated person" as the term is defined and used in the MCPA.

5.  Defendant Midland Funding LLC ("Midland") is a Delaware limited liability company with offices at 8875 Aero Drive, Suite 200, San Diego, California 92123. The registered agent in Michigan for Midland is CSC-Lawyers Incorporating Service (Company), 601 Abbott Road, East Lansing, Michigan 48823. Midland uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Midland is a "debt collector" as the term is defined and used in the FDCPA. Midland is a "regulated person" as the term is defined and used in the MCPA.

6.  MCM and Midland maintain an internet website (www.midlandcreditonline.com) which describes each company's function, and their relationship, as follows: "Midland Funding LLC is one of the nation's biggest buyers of unpaid debt. Midland Funding LLC purchases

accounts with an unpaid balance where consumers have gone at least 180 days without making a payment, or paid less than the minimum payment. Midland Funding LLC works with its affiliate, Midland Credit Management (MCM), to service accounts."

**IV.  Facts**

7.  Mr. Ostrow had a credit account (**** **** **** 3242) with Chase Bank USA, N.A. ("Chase") which he used to purchase goods and services for personal, family and household purposes. Any resulting obligation of Mr. Ostrow to pay money was a "debt" as the term is defined and used in the FDCPA and MCPA.

8.  Mr. Ostrow had a dispute with Chase regarding the terms and conditions of the account and the related, alleged balance.

9.  Mr. Ostrow disputes owing any money to Chase or anyone else in connection with the account.

10.  On or about June 16, 2012, a female MCM employee placed a telephone call to Mr. Ostrow's telephone and spoke with Mr. Ostrow. The MCM employee stated that Chase had charged off Mr. Ostrow's account in 2009, that "Midland" had purchased the account on May 30, 2012, that the account was in a "pre-legal status," and that if Mr. Ostrow did not agree to pay the alleged debt, then MCM would be sending the account to Midland's attorneys "to get their money back." Mr. Ostrow stated that he had never heard of MCM, that he had received nothing in the mail from MCM, and that he was disputing the debt. The MCM employee stated that he would note Mr. Ostrow's dispute and send Mr. Ostrow a dispute letter.

11.  On or about August 20, 2012, a female MCM employee named Gloria placed a telephone call to Mr. Ostrow's telephone and spoke with Mr. Ostrow. The MCM employee

stated that MCM was recording the conversation. The MCM employee stated that MCM had not spoken with Mr. Ostrow since the conversation in June 2012. The MCM employee stated that she was calling from MCM to collect a balance owed on Mr. Ostrow's Chase account, that the account was in a "pre-legal status," and that she was calling to make a voluntary payment arrangement so that Mr. Ostrow could avoid having a lawsuit filed against him. Mr. Ostrow stated that he had disputed the account with MCM in the conversation of June 2012. The MCM employee stated that MCM had no record that Mr. Ostrow had ever disputed the debt with MCM in writing or orally. The MCM employee stated that Midland had reported to the credit bureaus that the debt was delinquent, but *not* that the debt had been disputed by Mr. Ostrow. Mr. Ostrow stated that when he spoke with the MCM employee in June, he stated that the debt was disputed and that the debt should be reported as disputed to the credit bureaus. The MCM employee replied that the MCM account notes did show that there was a discussion in June about the debt being disputed, but that Mr. Ostrow did not send anything in writing to MCM to support the dispute, and that MCM could still continue its efforts to collect the debt from Mr. Ostrow because the account was outside of the validation period. Mr. Ostrow again stated, multiple times, that he was disputing the debt. The MCM employee stated that to dispute the debt, Mr. Ostrow was required to follow MCM's dispute process. The MCM employee stated that MCM had sent Mr. Ostrow a first letter in June, and then a second letter, instructing Mr. Ostrow that dispute the debt, Mr. Ostrow would need to provide MCM with proof that the account was not his, and that Mr. Ostrow had not provided any proof. The MCM employee stated that Mr. Ostrow had a limited amount of time to dispute the debt and that the time to dispute had expired. Mr. Ostrow expressly asked whether the debt was being reported as disputed. The MCM

employee replied, "No. Because we don't have evidence of such." Mr. Ostrow replied, "I told you I was disputing it." The MCM employee replied, "Okay, and in the notes you are saying you are disputing it. But we haven't received any proof."

12.     The FDCPA does not require the consumer to provide *any reason at all* in order to dispute a debt. *Sambor v. Omnia Credit Servs.*, 183 F. Supp. 2d 1234 (D. Haw. 2002); (*Mendez v. M.R.S. Assoc.*, 2004 WL 1745779 *2 (N.D. Ill. Aug. 3, 2004) (a consumer is entitled to dispute the validity of a debt for a good reason, a bad reason, or no reason at all); *Whitten v. ARS National Servs. Inc.*, 2002 WL 1050320 *4 (N.D. Ill. May 23, 2002) (imposing a requirement that a consumer have a 'valid' reason to dispute the debt is inconsistent with FDCPA); *Castro v. ARS National Servs., Inc.*, 2000 WL 264310 (S.D.N.Y. Mar. 8, 2000); *Frey v. Satter, Beyer & Spires*, 1999 WL 301650 (N.D. Ill. May 3, 1999); *DeSantis v. Computer Credit, Inc.*, 269 f.3d 159 (2nd Cir. 2001); *Mejia v. Marauder Corporation*, 2007 WL 806486 (N.D. Cal. 2007) (unlawful to suggest that proof of payment required for dispute).

13.     The FDCPA states that it is unlawful for a debt collector to communicate or threaten to communicate to any person credit information which is known or which should be known to be false, "including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8). The FDCPA does not require the consumer to dispute the debt in writing in order to invoke the protections of 15 U.S.C. § 1692e(8). *See, Brady v. The Credit Recovery Company, Inc.*, 160 F.3d 64 (1st Cir. 1998).

14.     Credit reporting constitutes an attempt to collect a debt. *See, e.g., Rivera v. Bank One*, 145 F.R.D. 614, 623 (D.P.R. 1993)(a creditor's report of a debt to a consumer reporting agency is a "powerful tool, designed, in part, to wrench compliance with payment terms from its

5

cardholder"); *Matter of Sommersdorf*, 139 B.R. 700, 701 (Bankr.S.D. Ohio 1991); *Ditty v. CheckRite, Ltd.*, 973 F.Supp. 1320, 1331 (D.Utah 1997).

15. On or about June 16, 2012, Mr. Ostrow told the MCM employee that he disputed the alleged debt, which triggered the protections of the FDCPA and obligated MCM when communicating in the future with any other entity (such as the consumer reporting agencies) regarding the account and related debt to also communicate to those entities that Mr. Ostrow was disputing the debt. That in turn would obligate the consumer reporting agencies whenever making a consumer report regarding Mr. Ostrow and the account to include a notation that the debt was disputed by Mr. Ostrow.

16. MCM and its employee named Gloria made false statements to Mr. Ostrow regarding Mr. Ostrow's right to dispute the debt.

17. MCM and its employee named Gloria false represented and falsely implied to Mr. Ostrow that to dispute the debt, Mr. Ostrow was required to dispute the debt in writing with MCM.

18. MCM and its employee named Gloria false represented and falsely implied to Mr. Ostrow that MCM had no record that Mr. Ostrow had ever disputed the debt with MCM in writing or orally.

19. MCM and its employee named Gloria false represented and falsely implied to Mr. Ostrow that defendants had not communicated to the consumer reporting agencies that Mr. Ostrow had stated to MCM in the June 16, 2012 telephone conversation that he disputed the debt.

20. MCM and its employee named Gloria false represented and falsely implied

to Mr. Ostrow that defendants would not communicate to the consumer reporting agencies that Mr. Ostrow had stated to MCM in the June 16, 2012 telephone conversation that he disputed the debt.

21. MCM and its employee named Gloria false represented and falsely implied to Mr. Ostrow that the time for Mr. Ostrow to dispute the debt with defendants had expired.

22. MCM and its employee named Gloria false represented and falsely implied to Mr. Ostrow that defendants would not communicate to the consumer reporting agencies that Mr. Ostrow was disputing the debt because the time for Mr. Ostrow to dispute the debt had expired.

23. MCM and its employee named Gloria wrongfully represented to Mr. Ostrow that defendants had reported to the consumer reporting agencies that Mr. Ostrow's account was delinquent but not that the debt was disputed by Mr. Ostrow.

24. MCM and its employee named Gloria false represented and falsely implied to Mr. Ostrow that defendants were not required to communicate to the consumer reporting agencies that the debt was disputed by Mr. Ostrow because Mr. Ostrow did not send anything in writing to MCM to support his dispute.

25. MCM and its employee named Gloria false represented and falsely implied to Mr. Ostrow that to dispute the debt, Mr. Ostrow was required to follow defendants' dispute process and dispute the debt in writing with defendants and provide proof of his dispute.

26. MCM and its employee named Gloria false represented and falsely implied to Mr. Ostrow that to dispute the debt, Mr. Ostrow was required to provide defendants with proof that the debt was not Mr. Ostrow's debt.

27. MCM and its employee named Gloria false represented and falsely implied to Mr. Ostrow that Mr. Ostrow had a limited amount of time to dispute the debt with defendants and that the time to dispute the debt had expired.

28. When Mr. Ostrow asked MCM and its employee named Gloria whether the debt was being reported by the consumer reporting agencies as disputed, the MCM employee falsely replied, "No. Because we don't have proof of such."

29. Each of the false statements regarding the dispute process and credit reporting, made by MCM and its employee named Gloria, would tend to mislead or confuse the reasonable, least sophisticated consumer.

30. The reasonable, least sophisticated consumer, could be mislead, confused and coerced into paying a disputed debt, upon hearing the false representations made by MCM and its employee Gloria, such as that (a) defendants had reported the debt to the consumer reporting agencies without also communicating that Mr. Ostrow had telephonically disputed the debt, (b) Mr. Ostrow was required to provide defendants with proof of his dispute, and (c) that the time for Mr. Ostrow to dispute the debt had expired. Stated differently, the misrepresentations made to Mr. Ostrow by MCM and its employee named Gloria were material misrepresentations.

31. It is unlawful for a debt collector to make a false representation of the character, amount, or legal status of any debt. 15 U.S.C. § 1692e(2)(A).

32. It is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken. 15 U.S.C. § 1692e(5).

33. It is unlawful for a debt collector to communicate or threaten to communicate to any person credit information which is known or which should be known to be false, including

the failure to communicate that a disputed debt is disputed. 15 U.S.C. § 1692e(8).

34. It is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt. 15 U.S.C. § 1692e(10).

35. It is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt. 15 U.S.C. § 1692f.

36. Defendants violated the FDCPA, 15 U.S.C. §§ 1692e(2)(A), (5), (8) and (10), and 1692f.

37. The FDCPA states in pertinent part that within five days of the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing a statement that if the consumer notifies the debt collector in writing, within thirty-day period after receipt of the notice, that the debt is disputed, the debt collector shall obtain verification of the debt and a copy of such verification shall be mailed to the consumer by the debt collector. 15 U.S.C. § 1692g(a).

38. On June 16, 2012, Mr. Ostrow orally disputed the debt with MCM.

39. MCM and its employee represented or implied to Mr. Ostrow in the June 16, 2012 telephone conversation that Mr. Ostrow's oral dispute was sufficient to exercise his rights under the FDCPA and obligate MCM to obtain verification of the debt and mail a copy of the verification to Mr. Ostrow.

40. MCM failed to obtain verification of the debt and mail a copy of the verification to Mr. Ostrow.

41. The FDCPA states in pertinent part that if a consumer notifies a debt within thirty

9

days after receiving the notice required by 15 U.S.C. § 1692g(a) that the debt is disputed, the debt collector shall cease collection of the debt until the debt collector obtains verification of the debt and a copy of such verification of the debt is mailed to the consumer by the debt collector. 15 U.S.C. § 1692g(b).

42. MCM failed to cease collection of the debt until after MCM had obtained verification of the debt and mailed a copy of such verification to Mr. Ostrow and instead continued to contact Mr. Ostrow in connection with efforts to collect the disputed debt, violating the FDCPA. 15 U.S.C. § 1692g(b).

43. In December of 2012, Mr. Ostrow was required to spend money to obtain his consumer reports from each of the three major consumer reporting agencies in order to monitor whether defendants had complied with law and communicated to the consumer reporting agencies that the alleged debt was disputed by Mr. Ostrow.

44. MCM, directly and indirectly, attempted to collect the alleged debt from Mr. Ostrow.

45. Midland, directly and indirectly, attempted to collect the alleged debt from Mr. Ostrow.

46. The acts and omissions of defendants and their employees done in connection with efforts to collect the alleged debt from Mr. Ostrow were done intentionally and wilfully.

47. Defendants and their employees intentionally and wilfully violated the FDCPA, MCPA and MOC.

48. The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who

refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e).

49. Defendants, to increase its business and profits, knowingly chose to use debt collection practices that violate the FDCPA and Michigan law, to the competitive disadvantage of those debt collectors who choose to abide by the law and refrain from using unlawful debt collection practices.

50. As an actual and proximate result of the acts and omissions of defendants and their employees, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, physical stress, mental anguish, emotional stress, acute embarrassment and suffering for which he should be compensated in an amount to be established by jury and at trial.

## V. Claims for Relief

### Count 1 – Fair Debt Collection Practices Act

51. Plaintiff incorporates the foregoing paragraphs by reference.

52. Defendants violated the FDCPA. Defendants' violations of the FDCPA include, but are not necessarily limited to, the following:

    a) Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

    b) Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt; and

    c) Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against defendants for:

a) Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b) Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c) Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d) Such further relief as the court deems just and proper.

## Count 2 – Michigan Collection Practices Act

53. Plaintiff incorporates the foregoing paragraphs by reference.

54. Defendants violated the MCPA. Defendants' violations of the MCPA include, but are not necessarily limited to, the following:

a) Defendants violated M.C.L. § 445.252(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

b) Defendants violated M.C.L. § 445.252(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened, and (ii) the legal rights of a creditor or debtor;

c) Defendants violated M.C.L. § 445.252(n) by using a harassing, oppressive, or abusive method to collect a debt; and

d) Defendants violated M.C.L. § 445.252(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendants for:

a) Actual damages pursuant to M.C.L. § 445.257(2);

b) Treble the actual damages pursuant to M.C.L. § 445.257(2);

c) Statutory damages pursuant to M.C.L. § 445.257(2); and

d) Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257(2).

## Count 3 – Michigan Occupational Code

55.     Plaintiff incorporates the foregoing paragraphs by reference.

56.     Defendants violated the MOC. Defendants' violations of the MOC include, but are not necessarily limited to, the following:

- a)     Defendants violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

- b)     Defendants violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened and (ii) the legal rights of a creditor or debtor;

- c)     Defendants violated M.C.L. § 339.915(n) by using a harassing, oppressive and abusive method to collect a debt;

- d)     Defendants violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee; and

- e)     Defendants violated M.C.L. § 339.918.

**Wherefore,** plaintiff seeks judgment against defendants for:

- a)     Actual damages pursuant to M.C.L. § 339.916(2);

- b)     Treble the actual damages pursuant to M.C.L. § 339.916(2);

- c)     Statutory damages pursuant to M.C.L. § 339.916(2); and

- d)     Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

**Demand for Trial by Jury**

Plaintiff demands trial by jury.

Dated: December 12, 2012

*/s/ Phillip C. Rogers*
Phillip C. Rogers (P34356)
Attorney for Plaintiff
40 Pearl Street, N.W., Suite 336
Grand Rapids, Michigan 49503-3026
(616) 776-1176
ConsumerLawyer@aol.com